UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHAMECA BROCK<br>O/B/O M.T. | CIVIL ACTION |
| VERSUS | NUMBER: 17-0206 |
| NANCY A. BERRYHILL, ACTING<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION | SECTION: "N"(5) |

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. (Rec. docs. 10, 11).

On May 2, 2014, Shameca Brock, *pro se* Plaintiff and the mother of the Plaintiff-in-interest herein, M.T., filed an application for SSI benefits on behalf of the minor child, alleging disability as of January 29, 2014. (Tr. pp. 88-97). In a "Disability Report-Child" form that appears in the administrative record below, the child's disabling condition was identified as slow learning. (Tr. pp. 116-120). Plaintiff's application for SSI benefits was denied at the initial level of the Commissioner's administrative review process on July 31, 2014. (Tr. pp. 58-60). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on November 2, 2015 at which Plaintiff, who was unrepresented by

counsel, and M.T. appeared and testified. (Tr. pp. 61-63, 32-47).[1/] On December 21, 2015, the ALJ issued a written decision in which she concluded that M.T. was not disabled within the meaning of the Social Security Act. (Tr. pp. 11-31). The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on December 29, 2016, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-6). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1382(c)(3).

In her cross-motion for summary judgment, Plaintiff cites a number of findings from an unidentified mental health professional as the basis of her challenge to the Commissioner's decision. (Rec. doc. 10-1). Relevant to the resolution of that challenge are the following findings that were made by the ALJ:

1. The claimant was born August 8, 2007. Therefore, she was a preschooler on May 2, 2014, the date [the] application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since May 2, 2014, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairment in accordance with SSR 96-6p: learning disorder in Reading and Math (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926). Specifically, Listing 112.05 [relative to] Intellectual Disability is not met.

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

---

[1/] At the outset of the hearing, Ms. Brock was duly advised of her right to representation and voluntarily waived that right, memorializing her election by executing a "Waiver of Right to Representation" form. (Tr. pp. 35-36, 86).

      6.    The claimant has not been disabled, as defined in the Social Security Act, since May 2, 2014, the date the application was filed or at any time through the date of this decision (20 CFR 416.924(a)).

<div align="right">(Tr. pp. 17, 19, 27).</div>

Judicial review of the Commissioner's decision to deny SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 590, 592 (5th Cir. 1983). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant, whether a child or an adult, bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Fraga*, 810 F.2d at 1301; 20 C.F.R. §416.912(a). In making a disability determination on a child, the Commissioner uses the three-step sequential analysis set forth in 20 C.F.R. §416.924, as follows:

      1.    Determine whether the child engaged in substantial gainful

<div align="center">3</div>

        activity during the relevant time frame and, if not;

2.     Determine whether the child has a medically determinable severe impairment and, if so;

3.     Determine whether the impairment meets, medically equals, or is functionally equal to an impairment set forth in the Listing of Impairments, Appendix 1, Subpart P, Part 404.

> *See Verrett v. Commissioner of Social Security*, No. 99-CV-3647 2001 WL 179922 at *1 n. 7 (E.D. La. Feb. 20, 2001)

      In determining whether a child's impairment is functionally equivalent to one of those set forth in the Listing of Impairments, the Commissioner considers the child's limitations in the following six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. §416.926a(b)(1). To be functionally equal to a listing and thus of listing-level severity, the child must have "marked" limitations in two of the six domains or an "extreme" limitation in one domain. 20 C.F.R. §416.926a(a). In evaluating a child's ability to function in each domain, the Commissioner is to consider: (1) the activities the child is able to perform; (2) the activities the child is not able to perform; (3) which of the child's activities are limited or restricted compared to children of the same age who do not have impairments; (4) whether the child has difficulty with activities at home, in childcare, at school, or in the community; (5) whether the child has difficulty independently initiating, sustaining, or completing activities; and (6) what kind of help the child needs to do activities, how much, and how often. 20 C.F.R. §416.926a(b)(2); *Maps ex rel. M.J. v. Astrue*, 09-CV-2226, 2010 WL 1946662 at *8 (N.D. Tex. Apr. 30, 2010), *adopted*,

2010 WL 1948363 (N.D. Tex. May 13, 2010).

The documentary evidence that was admitted in the administrative proceedings below begins with medical records from the Kids First TigerCARE Clinic dated February 19, 2013 where M.T. was seen for bumps all over her body. Hydroxyzine and a topical ointment were prescribed. (Tr. pp. 204-206). On what appears to be January 24, 2014, officials from the Esperanza Charter School issued an Integrated Report of Evaluation in an attempt to address M.T.'s deficits in math reasoning. (Tr. pp. 155-169). Unfortunately, the majority of that report is of poor readable quality. (*Id.*). As part of the evaluation, M.T. was administered the Woodcock-Johnson III Achievement Test in which she scored, *inter alia*, a standard score of 69 in Math Reasoning. (Tr. p. 163).

On January 29, 2014, M.T. was evaluated as part of an Individualized Education Program ("IEP") assessment to address a specific learning disability in math reasoning and, to a lesser extent, reading fluency. M.T. was at that time a second-year kindergarten student at Esperanza Charter School who had received one-on-one intervention for reading and math since the previous school year. She was described as a soft-spoken, easy-going, sociable child who was often seen with her "best friends" in class and was careful with and took pride in her work. With assistance from the special education program, M.T. was expected to progress in the general education curriculum. Various accommodations were made to M.T.'s learning environment, time allowances, instructional materials, and assistive technology. (Tr. pp. 191-198).

M.T. returned to TigerCARE on February 4, 2014 for continued treatment to the rash on her body. The assessment was folliculitis; Neosporin and a moisturizer were recommended. (Tr. pp. 201-203). At a subsequent visit on February 25, 2014, M.T.

5

presented with pain to and pulling of the ears and was diagnosed with otitis media. Amoxicillin was prescribed. (Tr. pp. 207-208). The child was seen again on April 25, 2014 for bumps on her leg and was diagnosed with contact dermatitis with a secondary bacterial infection. Bactroban was prescribed. (Tr. pp. 209-210).

On May 2, 2014, Ms. Brock completed the Administration's "Function Report-Child" form that is designed to capture information on a child's capabilities. As set forth on the form, M.T. had no problems with seeing or hearing but she did have some communication limitations including her ability to use sentences of four or more words most of the time, answering questions about short stories, and delivering simple messages like telephone messages. She also had difficulty defining common words. However, M.T. had no physical limitations or limitations affecting her behavior with others, tending to her personal needs, or in paying attention and staying focused on the task at hand. (Tr. pp. 105-112). On June 11, 2014, M.T.'s regular classroom teacher reported that the child was performing below average in reading, math, and written language and that she received speech special-education services twice weekly. In the domain of acquiring and using information, the teacher indicated that M.T. had serious problems in learning new material and recalling and applying previously learned material and obvious problems in reading/comprehending written material, comprehending/doing math problems, providing organized oral explanations and adequate descriptions, expressing ideas in written form, and applying problem-solving skills in class discussions. However, she had no problems in comprehending oral instructions, understanding school and content vocabulary, or understanding/participating in class discussions. M.T. also had no limitations in the five other domains of functioning enumerated in §416.926a(b)(1). (Tr. pp. 124-131).

On July 28, 2014, M.T. underwent a consultative psychological evaluation by Dr. Scuddy Fontenelle. In the previous school year, M.T. had received one-on-one instruction in reading and math and was slated for advancement to the first grade in the next school year. Despite her academic difficulties, the child took pride in her work and got along socially. As part of the evaluation, M.T. was administered the Weschler Intelligence Scale for Children: Fourth Edition ("WISC-IV") in which she scored a 79 in verbal comprehension, an 82 in perceptual reasoning, a 77 in working memory, a 75 in processing speed, and a full scale IQ score of 73, scores that fell in the low average to borderline ranges of intelligence. Thinking was reasonable, logical, and rational in style; M.T.'s thought content was focused on recreational interests; and, she enjoyed attending school. She was initially cautious and reserved but warmed up during the evaluation and although she became frustrated easily on more challenging tasks, there was no evidence of childhood depression, significant anxiety, anger outbursts, aggressive behavior, or property destruction. Judgment and insight were within normal limits, M.T. enjoyed social play and reciprocal interaction with others, and she showed an interest in making friends at school. Despite her struggles with school work and learning, M.T.'s pace, persistence, and concentration were fair and her relationship with classmates and teachers was good. The diagnostic impression was a specific learning disorder in reading and math and the prognosis was considered to be good with academic intervention and IEP Services at school. (Tr. pp. 213-216).

As noted earlier, on July 31, 2014, Plaintiff's application for SSI benefits was initially denied by the Commissioner. As part of that first-step review process, Plaintiff's file as it was then extant was reviewed by state-agency medical consultants in the fields of psychology and pediatrics and a disability adjudicator/examiner who found that M.T. had a less than

marked limitation in acquiring and using information and no limitations in any of the other five domains set forth in §416.926a(b)(1). (Tr. pp. 48-56, 57). M.T. returned to TigerCARE on January 14, 2015 with complaints of a cough, cold symptoms, a sore throat, and a fever. She was diagnosed with pharyngitis and was counseled on symptomatic care remedies. (Tr. pp. 230-233).

On January 16, 2015, a further IEP meeting was held with Ms. Brock and school officials. Although M.T. was said to dislike math and tended to get distracted from things very easily, she was excited about learning and loved to read, being described as enthusiastic, excelling in following directions, happy, and affectionate. Some accommodations were still needed despite improvement in her academic performance. (Tr. pp. 170-183). M.T. was seen again at TigerCARE on January 27, 2015 for a preventive exam, a rash, and ankle pain. No school-related concerns were noted. The assessment was a routine child health exam, ankle pain, urinary urgency, and eczema. Triamcinolone was prescribed and Plaintiff was counseled on over-the-counter remedies and diet. (Tr. pp. 224-229). Further care for a sore throat and a headache was administered on March 20, 2015. (Tr. pp. 220-223). The final pieces of documentary evidence that were admitted in the administrative proceedings below come in the form of report cards for the first and second quarters of the 2015-2016 school year in which M.T. was then in the second grade. Although her grades in math continued to fall in the incomplete range, the scores did improve slightly from the first to the second quarter as did her grades in other subjects (one A, one B, and one C). (Tr. pp. 184-186, 187-190).

The hearing *de novo* before the ALJ went forward on November 2, 2015. After being explained and waiving her right to representation, Ms. Brock took the stand and was

questioned by the ALJ. She testified that M.T., who was eight years of age at the time, was in the second grade after being held back in kindergarten one year. In school, the child received assistance with reading as well as speech therapy. Ms. Brock also testified that M.T. experienced mental-health issues and was affected by the seizures that were sometimes suffered by her cousin. (Tr. pp. 34-43).

M.T. then took the stand and was questioned by the ALJ. She testified that math was her most challenging subject and that she received assistance with it at school. Help with homework was provided by M.T.'s sister. M.T. could read simple words and she liked school where she had one friend. Leisure time was spent watching TV. (Tr. pp. 43-45). Upon further questioning by the ALJ, Ms. Brock testified that M.T. also suffered from eczema for which she had been prescribed medication. (Tr. pp. 45-46).

After considering the evidence of record, on December 21, 2015 the ALJ issued a written decision in which she concluded that M.T. was not disabled within the meaning of the Social Security Act. As required by the sequential analysis set forth in §416.924, the ALJ first determined that M.T. had not engaged in substantial gainful activity since the date of her application for SSI benefits and that she suffered from a severe impairment in the form of a learning disorder in reading and math. (Tr. p. 17). However, that impairment did not meet or medically equal the severity of one of those set forth in the Listing of Impairments, particularly Listing 112.05 relative to intellectual disability. (Tr. pp. 17-19). In reaching that conclusion, the ALJ considered the results of the consultative psychological evaluation that had been performed by Dr. Fontenelle in which M.T. achieved a full scale IQ score of 73 on WISC-IV testing which was above that required by Listing 112.05(D) and (E). (*Id.*).

Proceeding to the functional equivalence component of §416.924(d), the ALJ then

9

considered the level of M.T.'s functioning in the six domains enumerated in §416.926a(b)(1), finding that she had a less then marked limitation in acquiring and using information but no limitations in the other five domains. (Tr. pp. 19-27). In making that finding, the ALJ considered the testimony that was adduced at the administrative hearing, the opinions of the psychological state agency medical consultant and Dr. Fontenelle, the IEP evaluation results, the questionnaire from M.T.'s kindergarten teacher, and M.T.'s report cards from 2015-2016 school year. (Tr. pp. 20-22). Those records collectively demonstrate that although M.T. had some learning deficits in math and reading, she was expected to continue on a regular education curriculum with certain accommodations. While M.T.'s math reasoning score of 69 in the Woodcock-Johnson III Achievement Test causes the Court some concern as it is slightly more than two standard deviations below the mean, the Court is not directed to nor does the evidence of record point to day-to-day functional deficits in domain-related activities as required by §416.926a(e)(2)(iii). Even if that were not the case, M.T. would be found to have only a marked limitation in one of the six domains identified in §416.926a(a), which is insufficient to establish functional equivalence under the Regulations. The opinions of the examining psychologist, Dr. Fontenelle, and the state-agency medical consultants, all of whom are "acceptable medical sources" under the Regulations, 20 C.F.R. §§416.913(a)(1)-(5) and 416.927(e)(2)(i), were not refuted by other competent evidence of record and provide substantial support for the Commissioner's decision.

    In her cross-motion for summary judgment, Plaintiff cites what she represents to be undated observations from a mental health professional whom she does not identify. (Rec. doc. 10-1). The Court is provided with no time frame as to when those observations were

supposedly made in relation to the administrative proceedings below and absent the credentials of the observing individual, the Court is unable to determine whether he or she is an "acceptable medical source" within the meaning of the Regulations to properly assess the weight that the observations should be given.  As best as the Court can determine, the observations relied upon by Plaintiff were not submitted for inclusion in the record below and were thus not considered at any level of the Commissioner's administrative process.  The Court's review, however, is limited to the record that was made before the ALJ.  *Ferrari v. Astrue*, 435 Fed.Appx. 314 n. 3 (5th Cir. 2010)(citing *Ellis v. Bowen*, 820 F.2d 682, 684 (5th Cir. 1987)).  Plaintiff also attaches to her complaint a series of drawings that the Court assumes were done by M.T. depicting characters that she supposedly sees lurking in her closet at night.  (Rec. doc. 1, pp. 8-18).  Here again, there is no indication that those drawings were submitted to the Commissioner for her review and for present purposes it suffices to note that in performing his psychological evaluation of M.T., Dr. Fontenelle found no evidence of gross emotional psychopathology, autism, schizophrenia, or psychosis.  (Tr. p. 215).  Aside from Plaintiff's brief reference to illusions at the administrating hearing, none of the medical or educational records make any mention of such occurrences.  In any event, Plaintiff makes no showing of good cause as to why she failed to submit the observations or drawings in the proceedings below.  *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987).  The Court's task is to determine whether substantial evidence <u>of</u> <u>record</u> supports the Commissioner's decision, a highly deferential standard of review.  *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980).  That weighty burden has not been met here.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's motion for summary

judgment be denied, that Defendant's motion for summary judgment be granted, and that Plaintiff's suit be dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[2]

New Orleans, Louisiana, this 11th day of October, 2017.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[2] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.